ORDERED in the Southern District of Florida on September 10, 2007.



Steven H. Friedman, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

IN RE:

DOUGLAS MACDONALD,

        Debtor.           /

Case No.: 05-38639-BKC-SHF
**Chapter** 7 Proceeding

JOHN HOLLISTER, EILEEN HOLLISTER,
MARK TABOR and ELLEN SCHULMAN,

        Plaintiffs,
vs.

DOUGLAS MACDONALD,

        Defendant.         /

Adv. Pro. No.: 06-1597-BKC-SHF-A

## MEMORANDUM OPINION DENYING DISCHARGEABILITY OF DEBTS

THIS CAUSE came before the Court for trial on March 26, 2007 upon the Amended Complaint to Pierce Corporate Veil and Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2). The complaint alleges four counts: an action to pierce corporate veil; and actions objecting to the dischargeability of debts owed to John and Eileen Hollister, to Mark Tabor, and to Ellen Schulman. Following plaintiffs' presentation of testimony and documentary evidence at trial, and upon defendant's motion, the Court dismissed Count III of the Amended Complaint, which count pertains solely to the allegations asserted by plaintiff Mark Tabor, for the failure by Mr. Tabor

to present testimony or evidence at trial supporting his claim that the $22,800 in damages allegedly incurred by Mr. Tabor should be deemed non-dischargeable. Thereafter, defendant presented testimony and documentary evidence as to the claims of John and Eileen Hollister, and Ellen Schulman. The Court, having heard the testimony of witnesses and having considered their credibility and demeanor, and also having considered the exhibits introduced at trial, and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, which incorporates Federal Rule of Civil Procedure 52. Consistent with this Court's Judgment, the Court determines that the indebtedness due to plaintiffs John and Eileen Hollister is **non-dischargeable** in the amount of **$20,280.00**, pursuant to 11 U.S.C. § 523(a)(2)(A). The Court further determines that the indebtedness due to plaintiff Ellen Schulman is **non-dischargeable** in the amount of **$18,565.44**, pursuant to 11 U.S.C. § 523(a)(2)(A).

## FINDINGS OF FACT

The debtor's bankruptcy case was commenced on October 14, 2005 with his filing of a voluntary chapter 7 petition. Among the assets ostensibly owned by the debtor (hereafter, "defendant") was a 100% interest in Crest Contracting Corporation, an entity engaged in the roofing business.[1] At trial, the defendant acknowledged that he was the sole owner of his roofing enterprise, and that he had no employees aside from his wife, who assisted him in the operation of the enterprise. The defendant operated his roofing business from his home. Rather than maintaining a full-time or part-time staff of employees to assist him in his performance of roofing and re-roofing

---

[1] Although the debtor appears to have operated a roofing business under the name "Crest Contracting Corporation", which entity was incorporated on June 10, 1998, the entity was administratively dissolved on September 16, 2005 for failure to file its 2005 annual report.

contracts, defendant utilized independent contractors with regard to his contracts with customers, at least for the year 2005 (Tr. Trans. - pg. 63).

On February 1, 2005, defendant contracted with John and Eileen Hollister to construct and install a new roof to their home, located at 2622 NW 48th Street, Boca Raton, Florida, for a price of $25,350.00 (Tr. Ex. 1). On June 13, 2005, defendant contracted with Ellen Schulman to construct and install a new roof to her home, located at 2632 NW 42nd Street, Boca Raton, Florida, for a price of $21,750.00 (Tr. Ex. 3). Both contracts provide that the contract prices for the two roofs were to be paid in instalments, payable upon completion of various stages of the roof construction. In accordance with their respective contracts, the Hollisters paid the debtor an initial instalment upon the signing of their contract of $3,802.50, or 15% of the total contract price, and Mrs. Schulman paid the debtor an initial instalment upon the signing of her contract of $3,255.00, or 15% of the total contract price (Tr. Exs. 4, 5, 7, and 8). The afore-described instalment payments encompassed the instalments due **(a)** upon contract execution, and **(b)** upon the commencement of the "tear off", for the new roofs of the Hollisters and Mrs. Schulman.

With regard to the new roof to be installed upon the Hollisters' residence, Mrs. Hollister testified that the defendant did complete the "tear off" of the existing roof, and did install new tar paper. However, Mrs. Hollister further stated that, during the course of the installation of the tar paper by the defendant, she expressed concern to the defendant that there were several other homes in her neighborhood upon which the defendant was constructing new roofs, and as to which the "hot mop" phase had been completed, but which homes still were awaiting the delivery and installation of new roof tiles. In response (according to Mrs. Hollister), the defendant advised her that the owners of the other homes had not paid the defendant, in advance, the 50% instalment due under the

contract at the completion of the "hot mop" phase. According to Mrs. Hollister, the defendant represented that "[if] you pay me in advance you will get your tile. That's the difference" (Tr. Trans. pg. 11, lines 14 - 17). Upon direct examination, the defendant denied making such a representation to Mrs. Hollister (Tr. Trans. Pg. 108, lines 6 - 10).

Mrs. Schulman also testified that she paid the third instalment due under her contract prior to the completion of the "hot mop" phase and before the payment was due, to assure the installation of tiles on her new roof (Tr. Trans. pg. 43, lines 8 - 20). Neither the "hot mop" phase, nor the installation of tiles, was completed on Mrs. Schulman's roof.

## **CONCLUSIONS OF LAW**

### **Count I - Action to Pierce Corporate Veil (Alter Ego)**

By way of Count I of the Amended Complaint, plaintiffs contend that, during the course of the business transactions between plaintiffs and Crest Contracting Corporation ("Crest"), defendant Douglas MacDonald, by allegedly misusing funds made payable to, or used by, Crest, acted as and in fact was the alter ego of Crest. As such, plaintiffs assert that defendant should be deemed the alter ego of Crest. Under the doctrine of "alter ego", a court merely disregards the corporate entity and holds the individual(s) responsible for acts knowingly and intentionally done in the name of the corporation. *Black's Law Dictionary Fifth Edition* (1979). *Sub judice*, four of the debtor's creditors seek to impose personal liability upon defendant pursuant to their assertion that defendant was the alter ego of Crest.

> The "nominee"or "alter ego" or "instrumentality" rule has long been used to reach the assets of other corporate entities or shareholders by courts . . . . under this rule, corporate existence will be disregarded where a corporation . . . is so organized and controlled

4

>and its affairs so conducted as to make it only an adjunct and instrumentality of another corporation . . . . [or individual].

*In re Homelands of DeLeon Springs, Inc.*, 190 B. R. 666, 668 - 9 (Bankr. M.D. Fla. 1995). However, a cause of action or claim to impose personal liability upon an entity or individual affiliated with a debtor constitutes property of the bankruptcy estate. "The case law has distinguished alter ego claims that cause harm to the creditors generally from those which cause injury to a particular creditor or creditors. . . . Recovery on the alter ego claim would benefit the bankruptcy estate as a whole, consequently, the alter ego is properly characterized as a general claim as to which the trustee alone has standing as representative of the estate." *In re Buildings by Jamie, Inc.*, 230 B.R. 36, 44 (Bankr. D. N. J. 1998). *See also, In re Porras*, 312 B. R. 81 (Bankr. W. D. Tex. 2004). Since a claim predicated upon the doctrine of alter ego, in the context of a bankruptcy proceeding, may be asserted only be a trustee or debtor in possession, plaintiffs lack standing to assert such a claim.

### Count II - Objections to Dischargeability Pursuant to 11 U.S.C. § 523(a)(2)(A)

By way of Count II of the Amended Complaint, plaintiffs contend that they transferred funds to defendant based upon his false pretenses, false representations, or actual fraud. Specifically, plaintiffs John and Eileen Hollister allege that they paid defendant $20,280.00, based upon his false representation that he would repair or replace the existing roof to their home, when in actuality, he utilized their funds for other purposes and failed to repair or replace their roof. Plaintiff Ellen Schulman alleges that she paid defendant the sum of $18,565.44, based upon defendant's representation that he would repair or replace the existing roof to her home, when in actuality, he utilized her funds for other purposes and failed to repair or replace her roof. In his answer (C. P. 8),

defendant denies all allegations in the Amended Complaint. However, pursuant to the Pretrial Order entered on February 15, 2007 (C. P. 28), defendant acknowledges that plaintiffs entered into the referenced contracts with Crest, that plaintiffs John and Eileen Hollister paid the sum of $20,280.00, and that plaintiff Ellen Schulman paid the sum of $21,750.00. However, defendant denies that the referenced funds were received by him for his personal use; denies that he misled or defrauded plaintiffs; and denies that he engaged in improper conduct with regard to his transactions with plaintiffs.

To prevail under 11 U.S.C. § 523(a)(2)(A), the plaintiffs must establish that:

(1)  defendant made a false representation with the purpose and intention of deceiving plaintiffs;

(2)  plaintiffs relied upon the defendant's representations;

(3)  plaintiffs' reliance on the false representation was justifiably founded; and

(4)  plaintiffs were damaged as a result of the false statement.

*In re Daprizio*, 365 B.R. 268 (Bankr. S. D. Fla. 2007);  *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir. 1986).

A plaintiff bears the burden of proving the referenced elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). The Court discerns that there was no false statement or misrepresentation by defendant at the inception of the Hollister or Schulman contracts. Although defendant may have failed to comply with corporate formalities relating to the operation of his roofing enterprise, such failure, standing alone, would not subject defendant to personal liability for the funds paid to him by the Hollisters and Mrs.

Schulman on the basis of a false statement, false representation, or actual fraud. It appears that, with regard to both the Hollisters' contract and Mrs. Schulman's contract, defendant undertook reasonable efforts to perform the roof repairs or reconstruction for which he had obligated himself, up until the completion of the "tear off" phase. If the work performed by defendant, through the "tear off" phase, was performed improperly, the record does not warrant a finding that, with regard to the services of defendant performed through the "tear off" phase, defendant obtained funds from plaintiffs by false pretenses, a false representation, or actual fraud.

The same cannot be said with regard to the third instalment payment received by defendant from the Hollisters and Mrs. Schulman as to their respective contracts. With regard to the Hollisters' contract, Mrs. Hollister testified that, after having expressed concern to defendant as to whether, and when, he might be able to conclude the work upon her home, defendant assured Mrs. Hollister that the roof tiles would be delivered and installed within four to six weeks, if defendant received the third instalment payment of $12,675.00 prior to the completion of the "hot mop" phase (as provided in their contract). Similarly, Mrs. Schulman testified that she received assurances from defendant that, if she paid the $10,350.00 third instalment under her contract prior to the completion of the "hot mop" phase (as provided in her contract), the defendant would "get the tile order in to try and get it, you know, as hurricane season was approaching and to get the work done" (Tr. Trans. pg. 41, lines 4 - 7).

The defendant's testimony with regard to the financial status of his business enterprise is tenuous. He first testified that, as of the beginning of the year 2005, he was "having a lot of cash flow problems as far as being able to collect funds from different homeowners and keep the business running as far as keeping up with the material bills and the crew payments" (Tr. Trans. pg. 74, lines

3 - 7). Immediately thereafter, defendant recanted by stating that "[i]n the beginning of 2005 our cash flow was in pretty good shape. We were paying our bills and maintaining the business and things were fairly well in 2005 - the first six months of 2005" (Tr. Trans. pg. 74, Lines 12 -15). The defendant then contradicted himself by testifying that "[a]s the year 2005 proceeded along, due to the hurricanes, the costs of materials and labor escalated to the point where our cash flow situation was in bad shape" (Tr. Trans. pg. 75, lines 2 - 5).[2]

The defendant acknowledges that he failed to complete the construction of roofs upon the homes of the Hollisters and Mrs. Schulman (Tr. Trans. pg. 117, lines 5 - 7). He claims, however, that he made no misrepresentations as to his ability to complete the roofing projects, due to a significant increase in the cost of materials and labor, together with the then-existing shortage of available workmen (Tr. Trans. pg. 117, line 21 - pg. 118, line 18). Although the defendant steadfastly contends that he made no misrepresentations to Mrs. Hollister and Mrs. Schulman concerning the installation and completion of their respective new roofs *vis-a-vis* the early payment of the third instalment due under their respective contracts, the testimony of Mrs. Hollister and Mrs. Schulman on this point was clear and concise. In addition, both the Hollisters and Mrs. Schulman had no incentive to pay the third instalments due under their respective contracts prior to defendant's completion of the "hot mop" phase of construction. The defendant's early receipt and acceptance of these instalment payments corroborate the testimony of Mrs. Hollisters and Mrs. Schulman that a representation indeed was made to each of them that, with the early payment of the third instalment under their contracts, they were assured of the installation of tile and completion of their respective

---

[2] Hurricane Frances made landfall near Sewell's Point, Florida, approximately 35 miles north of West Palm Beach, Florida on September 4, 2004, causing substantial damage to thousands of homes. Three weeks later, on September 25, 2004, Hurricane Jeanne made landfall near Hutchinson Island, Florida, also causing substantial damage.

8

roofs. Considering the materials and labor shortages being experienced by defendant at the time of his representations to plaintiffs, the Court concludes that defendant made conscious misstatements to plaintiffs, to entice them into submitting the early payments to defendant. The plaintiffs have proven each of the elements required to warrant a determination that the debts owed to them are non-dischargeable.

Pursuant to Bankruptcy Rule 9021, the Court shall enter a separate judgment **(1)** determining the obligation owed to John and Eileen Hollister by Douglas MacDonald to be **non-dischargeable** in the amount of **$20,280.00**; and **(2)** determining the obligation owed to Ellen Schulman to be **non-dischargeable** in the amount of **$18,565.44**.

###

Copies to:

Brian K McMahon, Esq
1261 E Sample Rd. #215
Pompano Bch., FL 33064

Blaine H Hibberd, Esq.
633 SE 3 Ave #301
Ft. Lauderdale, FL 33301